UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

---------------------------------------------:

Clint Schnekloth                              :

                    Plaintiff,               :

                 v.                          :

Patrick Deakins, Washington Co.              :

Arkansas Justice of the Peace                :

in his individual and official               :

capacities;                                  :

Sam Duncan, Washington Co.                   :

Arkansas Justice of the Peace                :

in his individual and official               :

capacities;                                  :

Jim Wilson, Washington Co.                   :

Arkansas Justice of the Peace                :

in his individual and official               :

capacities;                                  :

Brian Lester, Washington Co.                 :

Attorney, in his individual and              :

official capacities,                         :    Case No. _____

                    Defendants.              :

--------------------------------------------- :

**COMPLAINT**

## I.    PRELIMINARY STATEMENT

1.  Free speech is the foundation of a free society.[1] On June 28, 2021, and July 15, 2021,

    Defendants in this case deprived Plaintiff, Clint Schnekloth, of his guaranteed rights of

    speech and participation in democratic government.

---

[1] "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can
prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force

2. This is a civil rights action in which Mr. Schnekloth, seeks relief from Defendants' violation of his rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, the Equal Protection Clause, and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a), *et seq.*

3. Mr. Schnekloth was unlawfully removed from the Washington County, Arkansas, Courthouse on two occassions during legislative debate and public comment at Quorum Court meetings on June 28, 2021, and July 15, 2021, in violation of his First and Fourteenth Amendments to the United States Constitution, the Equal Protection Clause, and Title II of the Civil Rights Act of 1964.

4. As a consequence, Mr. Schnekloth was not able to provide public comment or participate in the public meetings.  His removal was unlawful and based on unconstitutional restrictions on his First Amendment rights and impermissible government viewpoint discrimination.

5. The government sessions were open to the public.  On the agenda for the June 28, 2021, Quorom Court meeting were the local Public Defender's office and its lack of access for clients and non-compliance with the Americans with Disabilities Act due to government inaction to fix basic problems; funding to maintain the Northwest Arkansas Crisis

---

citizens to confess by word or act their faith therein."  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (holding disiplinary action against students for exercising a closely held religious belief against saluting icons was violated the First Amendment); *see also Whitney v. California*, 274 U. S. 357, 376 (1927) (Brandeis, J. concurring) ("Men feared witches and burnt women. It is the function of speech to free men from the bondage of irrational fears.");  William O. Douglass, *The One Un-American Act*, NIEMAN REPORTS, vol. 7, no. 1 (Jan. 1953), https://t.ly/6YEQ ("Restriction of free thought and free speech is the most dangerous of all subversions. It is the one un-American act that could most easily defeat us.").  Many of these cases with the most quotable Supreme Court Justices' phrases involved fringe political viewpoints. This is telling.  In contrast, Mr. Schekloth's speech is policy based and focused on his local government dispersing federal stimulus and rent relief funds.

Stabilization Unit; an update on the County's lapsed recyling program; the distribution of CARES ACT and AMERICAN RELIEF ACT funds; and "Resolution Declaring Washington County is a Pro Life County."

6. Sam Duncan ordered a Washington County Deputy Sheriff to remove Mr. Schnekloth on June 28, 2021, from a public Quorom Court County Services Committee Meeting for no apparent reason and without any good cause and outside of his lawful legislative authority.  Defendant Lester facilitated this civil rights violation while presiding over the Quorum Court meeting as the County Attorney.  Mr. Scheckloth's removal was outside of Defendant Lester's authority as County Attorney, and an example of deliberate indifference to Mr. Scheckloth's civil rights.

7. At July 15, 2021, meeting, the Agenda included the dispersal of AMERICAN RELIEFT ACT funding, a "Resolution Declaring Washington County is a Pro Life County;" Defendant Lester's second raise of 2021, and a raise for County Judge Joseph Wood.

8. Patrick Deakins ordered a Washington County deputy sheriff to remove Mr. Schnekloth on July 15, 2021, right before the beginning of the Quorom Court Meeting for no apparent reason and without any good cause and outside of his lawful legislative authority.  Before the meeting began, Jim Wilson impermissibly inquired into whether Mr. Schnekloth "personally knew Jesus" seemingly based on an opinion he expected Mr. Schnekloth to express during the public comment portion of the meeting.

9. Defendants have implemented and are continuing to enforce, encourge, or sanction an official policy, custom, or practice of unconstitutionally detaining and removing constituents during public Quorum Court meetings in violation of the First and Fourth

Amendments.  Their failure to remedy this official and ongoing civil rights violation amounts to deliberate indifference.

10. In addition, Defendants' official custom, pattern, and practice of inquiring into constitutents' religious views and only removing or censuring constituents with viewpoints who disagree with the Defendants' violates the Equal Protection Clause of the Fourteenth Amendment and Title II of the Civil Rights Act of 1964.

11. The County does not have a policy for when it is procedurally appropriate to remove a person from a public Quorum Court meeting, and, if anything, it appears the official practice is in flux.  It is not clear if it is an executive branch function, and if it is, the executive branch is not the one ordering constituents' removal.  Instead it is the legislative branch.

12. There is no legislative authority in the County's rules for legislators to order a person's removal (nor has there been any delegation of executive authority), yet it is legislative officials who are ordering the removal of people, such as Mr. Schnekloth, in violation of his civil rights. Defendants' have shown deliberate indifference in halting these violations or creating constitutionally adequate procedures.

13. The Sheriff and deputy sheriffs do not have training or guidance on when they may (or must) act to remove people from public meetings.  At times, County officials have said it may only be done by the County Judge using his executive authority.  At other times, the Sheriff has stated discretion lies with him.

14. The official custom, policy, or practice is: if a Justice of the Peace points and requests a person's removal, someone is removed and prohibited from exercising their right to speak.

15. The result is a an official custom, policy, or practice of violating constituents' civil rights, awkward local government meetings, anxious interactions with deputy sheriffs who appear frustrated they are ordered to remove people without due proccess or good cause, and a chilling effect on protected speech.

16. This happened twice to Mr. Schnekloth and was a violation of his civil rights on both occasions.

17. The violations of Mr. Schnekloth's civil rights were the direct and proximate cause of the policies, practices and customs of Defendants.  Defendants have acted with a deliberate indifference for Mr. Schnekloth's civil rights.

18. Mr. Schnekloth requests an enforceable policy that protects all community members' First Amendment Rights, prevents viewpoint discrimination that violates the Equal Protection Clause and Civil Rights Act of 1964, and clarifies the process for removing a person from a public meeting or censoring a person's speech that is lawful and provides clear guidance to legislators, executive officials, law enforcement, and the public.

19. Stated simply, Mr. Schekloth is asking (1) that the Defendants' restrictions on his free speech and civil rights on June 28 and July 15, 2021, be recognized as unlawful, and (2) the County create and enforce a procedure for allowing public comment and removing people from public meetings that is constitutitional.

20. At all times relevant to this action, Defendants have violated clearly established constitutional and federal law.

21. Mr. Schnekloth demands a jury trial on each of his claims pursuant to his Seventh Amendment right.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983, United States Constitution Amend. I, the Equal Protection Clause and Title II of the Civil Rights Act of 1964 under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

23. Mr. Schnekloth seeks both monetary and injunctive relief as authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

24. This Court has personal jurisdiction over the parties.

25. Venue in this judicial district is proper under 28 U.S.C § 1391(b) and (c) because all parties reside or are located in Washington County, Arkansas.

**PARTIES**

26. Plaintiff, Mr. Schnekloth, is a forty-nine-year-old progressive Lutheran minister and community organizer who resides in Fayetteville, Arkansas, and is a critic of some Washington County government policies, including the local government's failure to distribute COVID-19 relief money, respect repoductive rights, provide reasonable pay for county employees, or treat people equally.  Prior to the June 28, 2021, and July 15, 2021, Quorum Court meetings he helped organize and participated in peaceful and lawful demonstrations in the Washington County Courthouse parking lot on these issues. Mr. Schnekloth supports reproductive rights, but was specifically interested in speaking on the issues of distributing stimulus money and rent relief. Defendants' conduct denied Mr. Schnekloth the opportunity to fully attend the public meetings or make public comment and violated his civil rights.

27. Defendants Patrick Deakins, Sam Duncan, and Jim Wilson are elected Justices of the Peace for Washington County, and members of the Washington County Quorum Court,

the County Government's legislative body.  They are all sued in their individual and their official capacities.

28. Defendant Brian Lester is the appointed County Attorney for Washington County, Arkansas, and acts as the functional parliamentarian and chair of most Quroum Court meetings.  He is appointed by the Washington County Judge, who is the Executive in Chief for Washington County.  Defendant Lester is sued in his individual and official capacities.

29. The Washington County Government is the municipal Defendant, as all parties have been sued in their official capacities, for causing a depriviation of Mr. Schnekloth's civil rights through its deliberate indifference and its official policies, practices, and customs of removing members of the public during Quorum Court meetings in violation of their First Amendment rights based on unlawful viewpoint discrimination.  Quorum Court meetings are open to the public, typically held in person, and have seating within a legislative room for constituents and seating outside the room where people may attend the legislative meeting and watch without participating.

**FACTUAL STATEMENT**

**A. Mr. Schnekloth's Interactions with Defendants**

30. Defendants' frustration with Mr. Schnekloth's political viewpoints seemingly began after Mr. Schnekloth co-wrote a letter in the Arkansas Democrat Gazette on November 14, 2020, titled "Agencies Can't Meet the Demand in [Northwest Arkansas]."  The letter stated:

> We understand that here, at year-end, some municipal, county and state
> entities will receive or designate funds for covid-19 relief.  The virus has

affected so many areas of our lives, and there are a lot of competing priorities. As persons of faith and community leaders, we are writing to advocate that this relief primarily address the needs of those who are often forgotten: people experiencing homelessness and housing insecurity.

31. While County Government refused to release CARES ACT money for rent relief, tensions heightened following a surge in unhoused people and a breakdown in government decision making during the Spring of 2021.

32. Mr. Schnekloth expanded his protest to speaking out against the consistent exclusion of Washington County Justices of the Peace ("JP") Eva Madison and Evelyn Rios Stafford from legislative debate. During the pandemic's Zoom Quorum Court meetings, Defendant Lester would mute JP Madison and JP Rios Stafford using his control of the Zoom meetings. When in-person meetings restarted in late spring, Defendant Lester and Defendant Deakins would often prevent JP Madison and JP Rios Stafford from speaking during legislative sessions, by excluding them from sessions, asserting they were out of order, or requiring them to speak on behalf of consitutents during the limited public comment period in contravention of the Quorum Court's procedural rules for legislative debate.

33. In response, Mr. Schnekloth helped organized a public Facebook group called Washington County Cares to share information about local government. Mr. Schnekloth also routinely encouraged and participated in writing letters and emails to Defendants and sent Defendants several requests pursuant to Arkansas' Freedom of Information Act.

34. Among the issues Mr. Schekloth consistently protested were the exclusion of women and Democratic Quorum Court members from public debate, the reduction in public

comment time at many Quorum Court meetings,[2] the passing of two exorbitant raises to the County Attorney, Defendant Lester, and his purchase of a luxury vehicle using government funds. Mr. Schnekloth also campaigned against Defendants' witholding of federal government stimulus funds in contravention to their intended purpose to provide emergency relief to local residents, and the strategic slow distribution of $7.1 million in rent relief as Washington County experiences a housing crisis.[3]

### B. June 28, 2021, Events

35. At the June 28, 2021, Quorum Court Meeting, Mr. Schnekloth participated in a lawful and peaceful protest outside the County Courthouse where the meeting would be held in person.   On the agenda for the June 28, 2021, Quorom Court's County Services Committee Meeting were problems with the local Public Defender's office—specifically its lack of access for clients and non-compliance with the Americans with Disabilities Act; funding to maintain the Northwest Arkansas Crisis Stabalization Unit; an update on the County Government's lapsed recyling program; the distribution of CARES ACT and AMERICAN RELIEF ACT funds; and, added a few days before the meeting, and a "Resolution Declaring Washington County is a Pro Life County," which was sponsored by Defendant Deakins.

36. The meeting was well attended by members of the public and media. The legislative agenda had several issues of public importance, including many Mr. Schnekloth wished to speak about.

---

[2] Washington County's Quorum Court rules require only twelve minutes of public comment.  Members of the public are capped at three minutes of time per speaker.  Before 2021, motions to extend time for public comment to allow more speakers to express viewpoints had been matters of course, but became restricted as public comment became more negative toward Defendants.

[3] For example, Mr. Schnekloth often receives calls from community members about their need for rent relief and has attempted to make public comment about the fact the Fayetteville Housing Authority's rent relief funding is exhausted and applications were close in March 2021 while the Quorum Court has not distributed about $4 million in rent relief.

37. Before the beginning of the meeting, Defendants Lester and Duncan excluded JP Madison from fully participating in legislative debate by forcing her to sit with the crowd in the Quorum Court's galley.  Mr. Schnekloth stood and calmly said to the crowd in protest, "look what they've done, they've excluded one of the only two women and Democrats present from the meeting."

38. A traditional Unitarian Universalist prayer was then led by a minister selected by JP Rios Stafford, who was heckled by several members of the public for not being sufficiently evangelical.  For example, several community members began shouting "in Jesus' name" and "say his name" during the prayer and at its conclusion.

39. JP Madison was taunted by some people as a "princess" for attempting to sit with the other Quroum Court members, for questioning Defendant Lester about problems with the public defender's office and recycling services, and for attempting to speak about her personal experience of raising an adopted child to provide context on what it means to be "pro-life."  JP Rios Stafford was ridiculed by others for not having a uterus.

40. Debate then commenced on the Agenda without major interruption on several of the items with the exception of several loud public comments about the lack of a safe and functional office for the employees and clients of the public defender.  One member of the Public Defender's office, for example, stood and said, "it's always my office with no air conditioning," and there were numerous interruptions as Defendant Lester argued with JP Madison about her ability to join the debate as an elected legislator before excluding her from full participation.

41. At this point, the Quorum Court meeting, like many public meetings had significant public talkback.  There was no enforcement of public silence.  The general tone of the meeting was similar to a typical House of Commons debate in the United Kingdom.[4]

42. Right before Defendant Deakins' presentation of his proposed Resolution Declaring Washington County is a Pro Life County, Defendant Duncan instructed sheriff deputies to enter the room to remove any people who made interruptions or comments about the proposed resolution.  Many crowd members then reacted with talkback such as, "this sounds like a threat."  At this point, Defendant Duncan appeared agitated and repeatedly said "order," and emphasized the sheriffs deputies would enforce respectful behavior and remove people.

43. This set a premature and unneeded tone that formally changed the mood of the meeting and acted as a form of viewpoint discrimination because Defendant Duncan had silenced some types of what had been permitted speech with threats of arrest.

44. Defendant Deakins' than recited his statement of purpose for his Resolution while recieving both boos and cheers from the crowd.  Eventually, Defendant Deakins stated his hope for the resolution was that "we can deliver a succinct message and plow fertile ground in this County so that our organizations and citizens can work that ground to harvest benefits for years to come for everyone, including and especially for the unborn child."

45. At this point, many constituents audibly groaned and laughed at Defendant Deakins' use of a metaphor historically used to justify the forced reproduction of enslaved women, rape of women of all backgrounds, and the dehumanization of women.

---

[4] "Democracy is not polite.  It's often a shouting match in a public square." SALMAN RUSHDIE, THE LANGUAGES OF TRUTH, 224 (2021).

46. Lots of people shouted in both opposition and support of Defendant Deakins' Resolution. The room's loudest shouts, however, condemned Defendant Deakins' proclamations about women being reproductive factories.  His misogyny was met with many calls for equality.

47. One woman was removed after speaking from the front row for a few seconds about the offensiveness of the resolution to women and saying that Defendant Deakins has exceeded his allowed time of three minutes to speak.  So, Defendant Duncan pointed a finger toward her and said, "take her out," to the deputy sheriffs on standby.  The woman was physically removed, without restraints, but began to shout as she was pushed out of the room.

48. Mr. Schnekloth then called out from his seat to protest the unfairness of Defendant Duncan's action.  Defendant Duncan pointed at Mr. Schnekloth.  Defendant Duncan, said "Clint, please"  and ordered him removed.  Mr. Schnekloth replied in disbelief and asked why the woman was removed, and why he was being removed before peacefully complying with the sheriff deputy who was ordered by Defendant Duncan to remove Mr. Schnekloth from the building.

49. Defendant Wilson then made a motion to extend time for Defendant Deakins to describe his Resolution, which was seconded.

50. No other people were ordered removed after Mr. Schnekloth, although the talkback from the crowd increased, and no people voicing viewpoints in favor of Defendants' were told to be quiet, threatened, or removed.

51. JP Madison attempted to participate in the debate, but was excluded by Defendants Duncan and Lester after a lengthy back and forth about Quorum Court procedure

between Defendant Lester and JP Madison.  The interaction concluded with Defendant Lester instructing everyone to move on and telling JP Madison to sit down with the crowd.  JP Rios Stafford made a motion to amend the Resolution to be inclusive with language about protecting life in many ways, which was not seconded.

52. Public comment then began for twelve minutes on all agenda items, including Defendant Deakins' Resolution.  Defendant Duncan ordered that a speaker from each side be allowed to talk in alternating turns after the first speaker and, attempted, second speaker in line spoke against several of the Quorom Court members' statements throughout the evening.

53. Four community speakers were permitted before a motion to end debate was introduced.   At this point, aproximately thirty members of the public were in line to make public comment.  The next member of the public who in line to speak was Episcopalian Minister Lowell Grisham, who was expected to speak in protest to Defendant Deakins' resolution.   JP Rios Stafford made a motion to extend time for public comment, which was not seconded and the meeting adjourned.

**C. July 15, 2021, Events**

54. Following the June 28, 2021, meeting, Defendants restricted constituents' ability to comment by removing the official contact information for the Justices of the Peace from the County website, and deleting the "alljps@washingtoncountyar.gov" email address that allowed constituents to easily contact their elected officials.

55. Mr. Schnekloth and others organized and attended a peaceful protest for the July 15, 2021, Quorum Court meeting.  On the Agenda that day was a second spring raise for

Defendant Lester; a raise for County Judge Joseph Wood; and a full Quorum Court vote on Defendant Deakins' Resolution.

52. That evening, before the meeting, Defendants increased the security around the Quorum Court members and County Courthouse and overtly parked a Sheriff's transport van to take people arrested to the County Jail.   During the lawful and peaceful protest, pizza was served, signs were waved, and County officials were occassionally booed or cheered as they entered the Courthouse for the legislative session.

56. While entering the Courthouse to take his seat on the Quorum Court, Defendant Wilson approached Mr. Schnekloth, after Mr. Schnekloth shouted at him, "do better. Defendant Wilson asked Mr. Schnekloth, "do you know Jesus." Mr. Schnekloth responded, "yes."   Defendant Wilson than rhetorically remarked, "personally?" before walking by Mr. Schnekloth into the building under escort by Washington County Sherriff deputies.[5]

57. A few minutes later, before the Quorum Court meeting began, Mr. Schnekloth moved toward the front of the crowd and peacefully approached Defendant Deakins like a normal person.   Mr. Schnekloth was joining another constituent, who was speaking in support of Mr. Deakins' Resolution.   Mr. Schnekloth raised concerns to Defendant Deakins about Defendant Deakins mocking the woman on Twitter who was removed at

---

[5] This is consistent with other Justice of the Peaces' intereactions with Mr. Schnekloth.  For instance, in an email dated May 8, 2021, Justice of the Peace Butch Pond responded to Mr. Schnekloth's policy based email about Defendant Lester being awarded a $20,000 raise that month while many employees make the minimum wage of $11 an hour.  JP Pond responded, "I have been remembering you in my prayers. May the Lord lift his Countenance upon you ……. [sic]" while avoiding the substance of the public comment.   This is in line with several Justices of the Peace's sectarian bend underlying their viewpoint discrimination based on religious beliefs.  *See* RUSHDIE, *supra*, at p. 244-246 (remarking on the intersection of religion and politics that "some religious folks can perpretrate attacks on other folks' freedoms by redefining the word 'liberty' to mean something like 'divinely authorized bigotry.'").

the June 28, 2021, meeting for having airmpit hair.[6]  Defendant Deakins, who was not chairing the meeting, then asked the Washington County Sheriff Department to remove Mr Schnekloth.

58. At this point, and at all times, Mr. Schenckloth was acting lawfully and peacefully, and the meeting was about to start.  Under the instruction of Defendants, deputy sheriffs ordered Mr. Schnekloth to leave the meeting and building.  Mr. Schnekloth did not resist and peacefully left the building.  He was denied the opportunity to attend the meeting and speak by Defendants' conduct.

59. At the July 15, 2021, meeting a motion to extend time to allow comment by all members of the public was made. This shows that if Mr. Schnekloth had not been removed by Defendant Deakins, he would have been able attend and, importantly, to speak at the Quorum Court meeting.

60. Following the meeting Mr. Schnekloth, received an email from Sheriff Helder addressing his removal.

61. Sheriff Helder also commented to others after the July 15, 2021, meeting that his understanding was the removal of a person from a public Quroum Court meeting is an executive function.  Sheriff Helder seemed to believe people can only be removed if the County Judge orders removal, but also stated that he had learned a lot from the last meeting.  Sheriff Helder stated, in the future, he would try to use discretion when making arrests or removing people.

---

[6] In an odd turn of events, a photo of the woman removed at the June 28, 2021, meeting went viral on social media. Defendant Deakins, from his personal Twitter account, endorsed a view that "maybe she was removed for not shaving her armpits."

### D. Official Policies, Practices, or Customs and Deliberate Indifference
### Deprived Mr. Schnekloth of his Civil Rights

62. Defendants' violation of Mr. Schnekloth's civils rights is a direct and proximate cause its official policies, practices, and customs. The County Government's current procedures and measures are insufficient to deter future civil rights violations, and, if anything, appear to encourage or sanction impermissible viewpoint discrimination and stop protected free speech.

63. The County does not have a procedure for when it is appropriate to remove a person from a public Quorum Court meeting and its official policy, custom, or practice is if a Justice of the Peace requests removal (for whatever reason), a person is removed.  Yet, the County does not have a policy in place that authorizes Justices of the Peace to order removal as part of their legislative authority.

64. This prevents constituents, such as Mr. Schnekloth, from exercising their First Amendment rights, and is not a permissible regulation of speech or narrowly tailored as needed for limitations on protected speech.

65. The County, instead, has an official policy, custom, and practice of removing people based on impermissible viewpoint discrimination.  Defendants have ignored fixing or even acknowledging this problem.

66. Defendants' have failed to train officers and employees on when the removal of a person is appropriate, and shown deliberate indifference to civil rights violations by its failure to remedy violations or create proactive policies.

67. At times, County officials have said constituents may only be removed by the County Judge using his executive authority.  At other times, the Sheriff has stated ultimate discretion lies with him.

68. Justices of the Peace have been ordering removal of people, but have no legislative authority or delegation of executive authority to order removal.

69. Consequently, the County, through the actions of its officials, has an official policy, custom, or practice of discouraging protected speech, specifically from adverse viewpoints, by actions that have a chilling effect on lawful speech through threats of removal and arrest, questioning of constituents' religious beliefs, and actual removal of constituents who express viewpoints in disagreement with Defendants' political or religious views.

## FIRST CLAIM

### Violation of Mr. Schnekloth's First Amendment Rights Pursuant to 42 U.S.C. § 1983 on June 28, 2021, By All Named Defendants

70. Mr. Schnekloth incorporates and realleges the preceeding parapaphs of his Complaint.

71. Defendants violated Mr. Schnekloth's First Amendment Rights by ordering his removal from the June 28, 2021, Quorum Court meeting.  Through the individual actions of Defendants and the County Government's official policy, custom, and practice, and deliberate indifference they prevented Mr. Schnekloth from participating in his constitutionally protected right to discuss and speak on issues of local government.  *See e.g.*, *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (establishing that a municipality or local government is a person for purpose of a Section 1983 action); *Canton v. Harris*, 489 U.S. 378 (1989) (establishing that failure to train or enforce a policy when a constitutional violation was obvious amounted to deliberate indifference sufficient to create *Monell* liability).

72. Beginning in 1940, in striking down a loitering statute, the Supreme Court recognized, "[t]he freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. . . . Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." *Thornhill* v. *Alabama*, 310 U.S. 88, 101-102 (1940); *see also Cantwell v. Connecticut*, 310 U.S. 296 (1940) (incorporating the First Amendment through the Fourteenth Amendment to apply to the States).

73. The Quorum Court meetings on June 28 was without a doubt a designated public forum.  *See  Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 678 (1998). Courts have long recognized that discussion of public issues lies "at the heart of the First Amendment," and public meetings of governmental bodies must comply with the First Amendment and may not discriminate based on viewpoints or speakers. *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978) (criticizing a legislature's attempt to give one side of a debatable public question an advantage in expressing its views to the people).

74. Here, Mr. Schnekloth attempted to participate in an open, public meeting of government and attempted to speak on the issues of the agenda, but was removed without any legitimate government purpose by the individual conduct and pursuant to an official custom, policy or practice, which directly and proximately violated his First Amendment rights. *See e.g.*, *Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011) (holding a Mayor violated a political opponent's First Amendment rights when barring her from speaking based on

prior speech because a total bar was not constitutionally permissible even if it was content neutral, and denying qualified immunity to the officers who enforced the speech restriction); *Baca v. Moreno Valley Unified Sch. Dist*, 936 F. Supp. 719 (C.D. Cal. 1996) (holding school board policy of prohibiting critical comments during open input meetings violated the First Amendment).

### SECOND CLAIM
### Violation of Mr. Schnekloth's Rights under the Equal Protection Clause Pursuant to 42 U.S.C. § 1983 on June 28, 2021, By All Named Defendants

75. Mr. Schnekloth incorporates and realleges the preceeding parapaphs of his Complaint.

76. Defendants violated Mr. Schnekloth's rights under the Equal Protection Clause by ordering his removal from the June 28, 2021, Quorum Court meeting.

77. The Equal Protection Clause of the Fourteenth Amendment protects individuals from discrimination by the government, including based on religious beliefs.  Through the individual actions of Defendants and the County Government's official policy, custom, and practice, they prevented Mr. Schnekloth from participating in his constitutionally protected right to discuss and speak on issues of local government.

78. A government, including Defendants, has only a limited ability to regulate expressive activity in traditional and designated public forum.  Any viewpoint discrimination is presumptively unconstitutional.

79. A viewpoint or content-based exclusion of speech is, therefore, subject to strict scrutiny, meaning that the government must show the exclusion "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

80. Again, Courts have long recognized that, "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. . . . The essence of forbidden censorship is content control." *Police Dept. of Chicago* v. *Mosley*, 408 U.S. 92, 96 (1972) (holding that a content based restriction on protesting violated the Equal Protection Clause).

81. Viewpoint based restrictions on speech by the Government are forbidden because of the Constitution's "guarantee of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 270 (1964).

82. While *Mosley* was a picketing case, its language is compelling that "under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Mosley*, 408 U.S. at 96.

83. Governments should safeguard the equality of status in the field of ideas, and government allows an equal opportunity for all viewpoints to be heard. *Id.* at 97. Time, place, and manner regulations on speech must serve a significant government interest. *See e.g., Cox v. New Hampshire,* 312 U.S. 569, 575-576 (1941).

84. Here, Mr. Schnekloth's removal and censuring based on his prior interactions and viewpoints with Defendants was not based on any significant interest or even a legitimate government interest in preserving public order. The facts that no people other than Mr. Schnekloth and one other woman were removed, and that no one who expressed a

viewpoint that supported Defendants' was removed, censored, or silenced shows Defendants' viewpoint discrimination.

### THIRD CLAIM
**Violation of Mr. Schnekloth's First Amendment Rights Pursuant to 42 U.S.C. 1983 § on July 15, 2021, By All Named Defendants**

85. Mr. Schnekloth incorporates and realleges the preceeding parapaphs of his Complaint.

86. Defendants violated Mr. Schnekloth's civil rights at the July 15, 2021, Quorum Court meeting by ordering his removal before the meeting began.  Through the individual actions of defendants and the County Government's official policy, custom, and practice, they prevented Mr. Schnekloth from participating in his constitutionally protected right to discuss and speak on issues of local government.

87. At this meeting, the time to speak during public comment was extended, but Mr. Schnekloth was removed *before* the meeting even started.   If he had not been banned by Defendants at the beginning of the meeting, Mr. Scheckloth would have been allowed to provide public comment.

### FOURTH CLAIM
**Violation of Mr. Schnekloth's Rights under the Equal Protection Clause Pursuant to 42 U.S.C. § 1983 on July 15, 2021, By All Named Defendants**

88. Mr. Schnekloth incorporates and realleges the preceeding parapaphs of his Complaint.

89. Defendants violated Mr. Schnekloth's rights under the Equal Protection Clause by ordering his removal from the July 15, 2021, Quorum Court meeting. Through the individual actions of defendants and the County Government's official policy, custom,

and practice, they prevented Mr. Schnekloth from participating in his constitutionally protected right to discuss and speak on issues of local government.

90. At this meeting, the time to speak during public comment was extended, but Mr. Schnekloth was removed *before* the meeting even occurred.  Based on his prior removal, the comments made by Mr. Wilson and Mr. Deakins, and the Defendants' official policy of restricting negative viewpoints and personal dislike of Mr. Schnekloth he was banned from a meeting where he would have been able to make public comment.  Importantly, all members of the public in attendence were allowed to speak.

### FIFTH CLAIM
**Violation of Mr. Schnekloth's Rights Title II of the Civil Rights Act of 1964
Pursuant to 42 U.S.C. §1983 on July 15, 2021, by Defendants Deakins and Duncan
in their Individual and Official Capacities**

91. Mr. Schnekloth incorporates and realleges the preceeding parapaphs of his Complaint.

92. Defendants violated Mr. Schnekloth's Rights under the Equal Protection Clause under the First and Fourteenth Amendments by ordering his removal from the July 15, 2021, Quorum Court meeting in violation of the First Amendment.  Through the individual actions of Defendants and the County Government's official policy, custom, and practice, they prevented Mr. Schnekloth from participating in his constitutionally protected right to discuss and speak on issues of local government.

93. Governments may neither favor one viewpoint nor disfavor another viewpoint.  *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Discrimination against speech because of its message is presumed to be unconstitutional.  *See Turner Broadcasting System, Inc.* v. *FCC,* 512 U.S. 622, 641-643 (1994).

94. Here, the combination of Defendant Wilson and Defendant Deakins removal of Mr. Schnekloth after inquiring into his religious beliefs additionally violated his rights under Title II of the Civil Rights Act, which prohibits discrimination based on Mr. Schnekloth's religious beliefs.  The Quorum Court's official policy, practice, or custom of sanctioning viewpoint discrimination and inquiring into constituents' religious beliefs, is shown by the behavior of its officials such as Mr. Wilson asking if Mr. Schnekloth knows Jesus personally and JP Pond's email stating he was praying for Mr. Schnekloth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mr. Schnekloth, respectfully requests that the Court:

95. Award Mr. Schnekloth damages for violations of his federal civil rights and injunctive relief for an unconstitutional official policy and custom of detaining and removing members of the public in violation of their civil rights.

96. Award reasonable attorneys fees pursuant to 42 U.S.C. §1988.

97. Grant any other relief that the Court deems just and proper.


Dated: July 20, 2021


Respectfully submitted,
Clint Schnekloth


By: _____

Matthew Bender
AR Bar No 2014105
PO Box 742 Tontitown, Arkansas
Phone: (479) 200.3497
Email: mattbender87@gmail.com


*Attorney for Mr. Schnekloth*