IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CLINT SCHNEKLOTH                                                          PLAINTIFF

V.                              CASE NO. 21-CV-5131

PATRICK DEAKINS, Washington County,
Arkansas Justice of the Peace, in his
individual and official capacities;
SAM DUNCAN, Washington County,
Arkansas Justice of the Peace, in his
individual and official capacities;
BRIAN LESTER, Washington County
Attorney, in his individual and official
capacities                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Clint Schnekloth filed this civil rights action pursuant to 42 U.S.C. § 1983. Now pending before the Court are a Motion to Dismiss (Doc. 14) filed by Washington County Justices of the Peace ("JP") Sam Duncan and Patrick Deakins, and Washington County Attorney Brian Lester, and Plaintiff's Response in Opposition (Doc. 16). The Court heard oral argument regarding this motion on November 2, 2021.

The motion is **GRANTED** with respect to County Attorney Lester in his individual capacity; **DENIED** as to JPs Duncan and Deakins in their individual capacities; and **GRANTED** as to all Defendants in their official capacities.

### I.    BACKGROUND

This case concerns Plaintiff's removal from two public meetings on June 28 and July 15, 2021, in Washington County, Arkansas. Plaintiff sues two local legislators and the County attorney in their individual and official capacities, arguing his removal amounts

1

to discrimination in violation of the First Amendment and the Fourteenth Amendment's Equal Protection Clause.

### A. Quorum Court Structure & Procedures

The Arkansas Constitution empowers counties to exercise "local legislative authority" through the quorum court. Ark. Const. Amend. LV, § 1. These legislative bodies possess jurisdiction over local matters, *see Venhaus v. State ex rel. Lofton*, 285 Ark. 23, 25 (1985), and may levy taxes and appropriate public funds.[1]

The Washington County Quorum Court is composed of 15 elected members, referred to as JPs, and five committees.[2] A general session is held monthly, *see* Washington Cnty., Ark. Code of Ordinances, § 2-16(a) (2017), and individual committees often hold separate sessions as well.

Under Arkansas law, the quorum court must open its meetings to the public, as well as "adopt rules for conducting the meeting which afford citizens a reasonable opportunity to participate prior to the final decision" on a given matter. Ark. Code Ann. § 14-14-109. Local ordinances set forth specific rules for public participation in Quorum Court meetings, including:

- Each general session must begin with a 15-minute period in which "citizens may comment on any issue that is relevant to the business of the Quorum Court or the County," as well as provide a 12-minute period for public comment prior to the final vote on a given ordinance or resolution during which speakers must alternate between proponents and opponents.

---

[1] *See* Ark. Code Ann. § 14-14-801(b) for full (albeit non-exhaustive) list of powers the quorum court may exercise.

[2] *See 2021 Washington Cnty. Redistricting Info.*, https://www.washingtoncountyar.gov/government/departments-a-e/election-commission/2021-washington-county-redistricting-information (identifying 15 JP districts); Washington Cnty., Ark., Code of Ordinances, § 2-22 (2017) (listing committees).

- Committees must reserve 12 minutes for public comment before the committee votes on any proposal, as well as provide a 12-minute public comment period at the end of each committee meeting.

- During a public comment period, no individual may speak longer than three minutes.

Code of Ordinances, § 2-32. The county judge—in his role as the county's chief executive officer—serves as presiding officer over quorum court meetings. § 14-14-904(d)(1)(A).[3] The county attorney must also attend to "render[] such advice and consultation as may be appropriate." Code of Ordinances, § 2-174.

Plaintiff's description of quorum court meetings generally accords with the formal requirements articulated in state and local law. Per the Amended Complaint, Washington County Quorum Court meetings are open to the public and provide a 12-minute period of public comment, with each speaker limited to three minutes. *See* Doc. 11, p. 2.

### B. Plaintiff's Political Opposition

According to Plaintiff, Quorum Court meetings became increasingly tense in spring 2021. Plaintiff contends Defendants regularly censored political opposition. That included two JPs, who were often muted during Zoom meetings or otherwise prevented from participating. Furthermore, while the Quorum Court traditionally extended public comment to allow more individuals to participate, Defendants began reducing the comment period to the statutorily required 12 minutes.

Plaintiff, a Lutheran minister and housing advocate, helped organize a public Facebook group to increase turnout at Quorum Court meetings and encouraged citizens to write letters and file Freedom of Information Act requests. *Id.* at 7. Plaintiff regularly

---

[3] In the absence of the county judge, "a quorum of the justices by majority vote shall elect one (1) of their number to preside but without the power to veto." § 14-14-904(d)(1)(B).

3

attended meetings, during which he participated (or attempted to) in the public comment period. *Id.* He also "consistently protested" outside the meetings, including prior to the meetings on both June 28 and July 15, 2021. *Id.*

### C. Quorum Court County Services Committee Meeting, June 28, 2021

On June 28, 2021, the County Services Committee met to discuss issues in the local public defender's office, several funding-related topics, the County's lapsed recycling program, and a "Resolution Declaring Washington County is a Pro Life County," sponsored by Defendant JP Deakins. *See* Doc. 11, p. 8. Defendant JP Duncan chaired the meeting.

The meeting was punctuated with small outbursts among audience members. For example, several community members heckled the minister who led the opening prayer, interrupting him with shouts of "in Jesus' name" and "say his name." *Id.* Two JPs were repeatedly interrupted by jeers. And, at one point, a member of the Public Defender's office stood and exclaimed, "[I]t's always my office with no air conditioning!" *Id.* at 8–9.

As JP Deakins prepared to present his proposed "Resolution Declaring Washington County is a Pro Life County," things got a little rowdier. JP Duncan preemptively ordered the Sheriff's deputies to remove anyone who interrupted the proceedings. *Id.* at 9. Public "talkback" broke out. Some members of the crowd booed in opposition to the resolution, while others cheered in support. *Id.* at 9–10. JP Duncan reiterated that the Sheriff's deputies would "enforce respectful behavior and remove people." *Id.* at 10. JP Deakins proceeded with his presentation.

At some point, JP Duncan ordered that one audience member voicing opposition be removed. *Id.* at 11. Upon "call[ing] out from his seat to protest the unfairness," Plaintiff

4

too was removed. *Id.* Plaintiff contends that only Defendants' "political opponents" were told to be quiet, threatened with removal, or removed.

Following the meeting, Defendants removed the contact information for the Justices of the Peace from the County website, as well as "delet[ed] the 'alljps@washingtoncountyar.gov' email address that [previously] allowed constituents to easily contact their elected officials." *Id.* at 13.

### D. Quorum Court General Meeting, July 15, 2021

On July 15, 2021, the full Quorum Court assembled at the Courthouse. The agenda included a vote on JP Deakins's Resolution. Plaintiff attended a protest outside the Courthouse and then entered the building. Before the meeting began, Plaintiff approached JP Deakins to voice concern about JP Deakins's recent conduct on Twitter.[4] *Id.* at 14. In response, JP Deakins ordered the Washington County Sheriff's Department to remove Plaintiff. Plaintiff peacefully complied and left the building.

## II. LEGAL STANDARD

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[4] "[A] photo of the woman removed at the June 28, 2021, meeting went viral on social media," and JP Deakins used his personal Twitter account to "endorse[] a view that 'maybe she was removed for not shaving her armpits.'" *Id.* at 14, n.10.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 663)).

"This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim or element," *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (cleaned up), but the alleged facts must be specific enough "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Finally, "[f]ederal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (internal quotation marks and citation omitted). Quite simply, "it is unnecessary to set out a legal theory for the plaintiff's claim for relief" in a pleading. *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) (quoting *City of Shelby*, 574 U.S. at 12). Here, "[s]o long as the facts alleged in the complaint demonstrate" a deprivation of Plaintiff's constitutional right, Plaintiff "ha[s] met [his] burden at the pleading stage." *Id.*

### III.   PERSONAL LIABILITY

Plaintiff alleges the decision to twice expel him from public meetings violated his constitutional rights.[5] Defendants maintain Plaintiff fails to state a claim under § 1983, arguing Plaintiff did not suffer a constitutional deprivation, and, even if the Court finds otherwise, the doctrine of qualified immunity protects against personal liability.

**A. Plaintiff Adequately States a Claim Against JP Duncan and JP Deakins**

Because "[l]iability for damages for a federal constitutional tort is personal," the Court must "independently assess" the conduct of each defendant. *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006). With few exceptions, liability attaches only where a public official personally participated in an alleged violation. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

Plaintiff contends all three Defendants violated his rights on June 28, 2021, and again on July 15. But the allegedly unconstitutional conduct that occurred on June 28 involved only JP Duncan. Thus, on Counts I and II, Plaintiff necessarily fails to state a claim against JPs Lester and Deakins. The same analysis applies to the events of July 15. The allegedly unconstitutional conduct involved only JP Deakins, so Plaintiff necessarily fails to state a claim against County Attorney Lester and JP Duncan.

Below, the Court analyzes the sufficiency of Plaintiff's Complaint on Counts I and II with respect to JP Duncan, and on Count III with respect to JP Deakins. The Court concludes Plaintiff plausibly states a claim against both Defendants.

---

[5] Plaintiff alleges three causes of action: Count I (the June 28 removal violated the First Amendment); Count II (the June 28 removal violated the Equal Protection Clause); and Count III (the July 15 removal violated the First Amendment).

### 1. First Amendment Claims[6]

The First Amendment reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Accordingly, "government officials may not exclude from public places persons engaged in peaceful expressive activity solely because the government actor fears, dislikes, or disagrees with the views those persons express." *Sessler v. City of Davenport*, 990 F.3d 1150, 1155 (8th Cir. 2021) (quoting *Wood v. Moss*, 572 U.S. 744, 756–57 (2014)). Yet "protected speech is not equally permissible in all places and at all times." *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985)). The state, "no less than a private owner of property," retains authority "to preserve the property under its control for the use to which it is lawfully dedicated." *Ball v. City of Lincoln*, 870 F.3d 722, 729 (8th Cir. 2017) (quoting *United States v. Grace*, 461 U.S. 171, 178 (1983)).

---

[6] Plaintiff appears to embrace two First Amendment theories: viewpoint discrimination and retaliation. Plaintiff's Complaint alleges the former (Doc. 11), while Plaintiff's Response in Opposition to Motion to Dismiss (Doc. 16) gestures to both. Either theory, if supported by factual allegations contained in the Complaint, would suffice to state a First Amendment claim under § 1983.

Because the Court finds Plaintiff adequately states a First Amendment claim against both JPs Duncan and Deakins based on viewpoint discrimination, this Opinion does not discuss retaliation. This does not prevent Plaintiff from later advancing a First Amendment retaliation theory. "A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982). Here, the factual allegations, construed in Plaintiff's favor, indicate Defendants deprived Plaintiff of an opportunity to participate in a public meeting because Defendants disliked the viewpoint Plaintiff expressed or that Defendants anticipated he would express. Such facts give Defendants reasonable notice of the claims at issue in the present litigation, whether framed as viewpoint discrimination or retaliation.

The nature and intended use of public property dictates "the extent to which the [g]overnment can control access." *Ball*, 870 F.3d at 729 (alteration in original) (quoting *United States v. Kokinda*, 497 U.S. 720, 726 (1990)). The Court relies on the "forum" framework to "determin[e] when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius*, 473 U.S. at 800. The analysis begins with classification: Does the forum constitute a traditional public forum, designated public forum, or nonpublic forum, and, if a designated public forum, is it of a "limited" or "unlimited" nature?

The state may dedicate property to "use by the public as a place for expressive activity." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). In this setting—termed a "designated public forum"—the state retains discretion to "limit[] the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006) (quoting *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991)). This is the "limited designated public forum." The state may also decline to impose such limits, thereby creating an "unlimited designated public forum."[7]

---

[7] In *Victory Through Jesus Sports Ministry Foundation v. Lee's Summit R-7 School District*, the Eighth Circuit explained that while the Supreme Court initially referred to "limited public forums" as "nonpublic forums," both labels describe government facilities opened for limited purposes and, for First Amendment purposes, the same standard applies. 640 F.3d 329, 334–35 (8th Cir. 2011). The court stated: "[T]his change in nomenclature has not changed the governing standard. A limited public forum, like a nonpublic forum, may be 'limited to use by certain groups or dedicated solely to the discussion of certain subjects,' and the public entity 'may impose restrictions on speech that are reasonable and viewpoint-neutral.'" *Id.* (citing *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law. v. Martinez*, 561 U.S. 661, 679, n.11 (2010)).

Quorum Court meetings represent a limited designated public forum.[8] Members of the public may attend and participate in meetings, although discussion focuses on county affairs.

Regulation of speech in this context must be viewpoint neutral and "reasonable in light of the purpose served by the forum." *Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1171 (E.D. Mo. 2010). Officials may enforce content-based restraints "designed to confine the forum to the limited and legitimate purposes for which it was created," *Galena v. Leone*, 638 F.3d 186, 199 (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004)), as well as implement time, place, and manner restrictions, so long as the rules are content-neutral, "narrowly tailored to serve a significant government interest," and "ample alternative channels of communication" remain available, *Knight v. Montgomery Cnty.*, 470 F. Supp. 3d 760, 768 (M.D. Tenn. 2020) (quoting *Youkhanna v. City of Sterling Heights*, 332 F. Supp. 3d 1058, 1069 (E.D. Mich. 2018), *aff'd*, 934 F.3d 508 (6th Cir. 2019)). "[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (second alteration in original) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

---

[8] Caselaw supports this characterization. *See, e.g., Madsen v. City of Lincoln*, 2021 WL 6201232, at *8 (D. Neb. Dec. 8, 2021) ("City council meetings open to the public are generally regarded as limited public forums."); *Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1172 (E.D. Mo. 2010) ("By opening its meetings to the citizenry of the City of Pacific for participation and discussion of matters of public concern, the meetings of the defendant City's [Board of Alderman] were designated limited public forums . . . ."); *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) ("[The] Council meeting was a limited public forum inasmuch as the meeting was held for the limited purpose of governing Erie County and discussing topics related to that governance.").

According to Defendants, "any alleged restrictions on Plaintiff's speech . . . were reasonable, viewpoint neutral, and served important governmental interests." (Doc. 15, p. 10). They argue, "Plaintiff does not have a First Amendment right to 'call out from his seat' whenever he pleases or engage in irrelevant debate . . . outside of the public comment portion of the meeting and outside of the agenda topics." *Id.* Generally, that is correct. "There is a significant governmental interest in conducting orderly, efficient meetings of public bodies." *Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004) (citing *Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989)). "[T]o deny the presiding officer the authority to regulate irrelevant debate and disruptive behavior at a public meeting . . . would cause such meetings to drag on interminably, and deny others the opportunity to voice their opinions." *Jones*, 888 F.2d at 1333. Accordingly, to ensure meetings proceed smoothly, Quorum Court officials may restrict public comment to a specified period,[9] limit the length of time an individual may speak,[10] and remove disruptive audience members.[11]

However, "even if a limitation on speech is a reasonable time, place, and manner restriction, there is a First Amendment violation if the defendant applied the restriction

---

[9] *See Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir. 1984) (finding it reasonable to limit each speaker to five minutes during public hearing).

[10] *See Griffin v. Bryant*, 677 F. App'x 458, 461–62 (10th Cir. 2017) (finding insistence that plaintiff speak during the meeting's public input portion did not violate the Constitution).

[11] *See White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir.1990) (holding City Council may restrict speech when it "disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting"); *Eichenlaub*, 385 F.3d at 281 (finding no error in removing plaintiff when the decision was motivated by the "content-neutral desire to prevent his badgering, constant interruptions, and disregard for the rules of decorum").

11

because of the speaker's viewpoint." *Galena*, 638 F.3d at 199.[12] That is precisely what Plaintiff alleges here.

"The government discriminates against viewpoints when it disfavors certain speech because of 'the specific motivating ideology or the opinion or perspective of the speaker.'" *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 31 (2d Cir. 2018) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). Plaintiff alleges that many audience members spoke out of turn during the June 28 meeting. Yet JP Duncan threatened—and, ultimately, ordered—the removal of only two, both of whom expressed opposition to the Resolution. With respect to July 15, Plaintiff contends that prior to approaching Deakins, another community member was speaking with him. That individual, who expressed support for JP Deakins's Resolution, did not face any consequences. Plaintiff, who expressed displeasure with JP Deakins, was prevented from attending the meeting.

Furthermore, the Court may reasonably infer Defendants possessed some preexisting familiarity with Plaintiff and his opinions and believed that, if allowed to participate in public comment, Plaintiff would likely voice opposition to Defendants' policies. In the months preceding the June 28 and July 15 meetings, Plaintiff published a letter in the Arkansas Democrat Gazette criticizing local government housing policy; created a public Facebook group to share information about the Quorum Court; organized and attended protests in opposition to Quorum Court policies; spoke out on different

---

[12] *See also InterVarsity Christian Fellowship/USA v. Univ. of Iowa*, 408 F. Supp. 3d 960, 979 (S.D. Iowa 2019) ("When a regulation governs what speech is permitted in a limited public forum—and thus establishes the forum's limitations—the disparate application of that regulation can constitute viewpoint discrimination."), *aff'd*, 5 F.4th 855 (8th Cir. 2021).

platforms against Defendants' alleged attempts to censor other JPs; and communicated his policy disagreements directly to Quorum Court members via email.

Under certain circumstances, state officials may limit public commentary or remove a disruptive audience member from a public meeting. But the existence of legitimate reasons to curtail an individual's speech or deny them access does not empower officials to do so for any reason at all. Plaintiff plausibly alleges JP Duncan and JP Deakins selectively enforced the forum rules in violation of the First Amendment, thereby depriving Plaintiff of his constitutional rights.

### 2. Equal Protection Claim

In Count II, Plaintiff alleges the events of June 28 give rise not only to a violation of the First Amendment but also to a violation of the Equal Protection Clause under the Fourteenth Amendment.

Plaintiff alleges JP Duncan treated him differently than members of the public who expressed support for the Resolution. According to Plaintiff, JP Duncan ordered his removal not because he spoke out of turn but because JP Duncan disliked his viewpoint.

"Government action that suppresses protected speech in a discriminatory manner may violate both the First Amendment and the Equal Protection Clause." *See Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 779 (9th Cir. 2014). The analysis is "essentially the same." *Id.* at 780 (quoting *Barr v. Lafon*, 538 F.3d 554, 575 (6th Cir. 2008)). To prevail on a selective-enforcement theory under the Equal Protection Clause, a plaintiff must demonstrate he was treated differently from other "similarly situated" individuals and "that such differential treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights."

*Wandering Dago*, 879 F.3d at 40 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)).

Defendants have not suggested a legitimate basis upon which JP Duncan might have differentiated between Plaintiff and other audience members who were also violating Quorum Court rules. Many spoke out of turn on June 28, but only those voicing opposition were removed.

The First Amendment and Equal Protection claims rise and fall together. Evidence demonstrating viewpoint discrimination necessarily gives rise to an Equal Protection claim, and defenses against First Amendment liability preclude Equal Protection liability. *See Ill. Liberty PAC v. Madigan*, 902 F. Supp. 2d 1113, 1126 (N.D. Ill. 2012), *aff'd*, 2012 WL 5259036 (7th Cir. Oct. 24, 2012) (explaining that "it makes no difference whether a challenge to the disparate treatment of speakers or speech is framed under the First Amendment or the Equal Protection Clause").

### B. Qualified Immunity

When a government official is accused of violating an individual's constitutional rights, qualified immunity shields that government official from liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "On a motion to dismiss, qualified immunity warrants dismissal 'only when the immunity is established on the face of the complaint.'" *Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790, 806 (D. Minn. 2021) (quoting *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)).

This is a two-step inquiry. In order for a plaintiff to overcome an official's defense of qualified immunity, he must show: "(1) the facts, viewed in the light most favorable to

the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).[13]

"For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The question is whether the law gave the officials 'fair warning that their alleged conduct was unconstitutional.'" *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009) (quoting *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008)). In the Eighth Circuit, fair warning requires "precedent, controlling authority, or a robust consensus of cases of persuasive authority," *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 835 (8th Cir. 2021) (internal quotation marks omitted) (citing *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018)), that "place[s] the statutory or constitutional question beyond debate," *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

JPs Duncan and Deakins are not entitled to qualified immunity. Neither could have reasonably believed viewpoint discrimination was lawful under existing precedent. Both the Supreme Court and the Eighth Circuit have repeatedly held viewpoint discrimination is impermissible in a limited, designated public forum.[14]

---

[13] Per the above discussion, Plaintiff satisfies the constitutional violation requirement. Thus, the only remaining question is whether the right was clearly established.

[14] *See, e.g., Rosenberger*, 515 U.S. at 829 ("Once it has opened a limited forum," the state "may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may it discriminate against speech on the basis of its viewpoint." (internal quotation marks and citations omitted)); *Bowman*, 444 F.3d at 976

Existing Eighth Circuit caselaw explicitly addresses this in the context of public meetings. For instance, in *Lee v. Driscoll*, the court explained that "[w]hen the government holds meetings that are open to public participation, excluding particular members of the public may violate the First Amendment." 871 F.3d 581, 585 (8th Cir. 2017) (citing *Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175–76 (1976)). In another case, *Green v. Nocciero,* the Eighth Circuit characterized a school board meeting as a "nonpublic or limited public forum" and explained:

> The School Board could reasonably restrict public access to this forum "based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand." This necessarily included the authority to remove an unruly or disruptive member of the audience "to prevent his badgering, constant interruptions, and disregard for the rules of decorum." But having chosen to conduct its business in public and to hear citizen views, the Board could not deny access to the meeting and, while it could limit the subject matter of citizen comments, it could not discriminate against a speaker based on his viewpoint.

676 F.3d 748, 753–54 (8th Cir. 2012) (citations and internal quotation marks omitted).

The Eighth Circuit's approach mirrors that of its sister circuits, many of which have held public meetings represent limited, designated public forums in which viewpoint discrimination is impermissible.[15] Defendants do not point to any case, decided at any level, that states otherwise.

---

("[I]n a limited designated public forum, restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral." (internal quotation marks omitted)).

[15] *See, e.g., Galena*, 638 F.3d at 199 (finding that a County Council meeting is a limited public forum, and "there is a First Amendment violation if the defendant applied [a] restriction [on speech] because of the speaker's viewpoint"); *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008) (holding that a County Planning Commission is a limited public forum and, while the "Commission is justified in limiting its

The Court finds a reasonable public official in JPs Duncan and Deakins's respective positions would have known it was constitutionally impermissible to remove individuals from a public meeting based on viewpoint. The law gave both Defendants "fair warning that their alleged conduct was unconstitutional." *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009) (quoting *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008)).

### IV.     Municipal Liability

In addition to his claims against the individual Defendants, Plaintiff also seeks to hold Washington County liable.[16] The Court rejects this claim.

For municipal liability to attach, "the entity itself [must be the] 'moving force' behind the deprivation." *Graham*, 473 at 166, n.12 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). Accordingly, municipalities cannot be held liable for their employees' actions under a *respondeat superior* theory. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a cognizable claim exists only where a public employee's "unconstitutional act can be characterized as execution of an established governmental policy or custom." *Sanders v. St. Louis Cnty.*, 724 F.2d 665, 667 (8th Cir.

---

meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business[,] . . . restrictions may not discriminate on the basis of a speaker's viewpoint"); *Norse*, 629 F.3d at 975 (finding that a public city council meeting is a limited public forum, and attendees have a "First Amendment right to be free from viewpoint discrimination"); *Mesa v. White*, 197 F.3d 1041 (10th Cir. 1999) (finding a genuine issue of material fact existed regarding whether public officials' refusal to grant individual permission to speak at public meeting resulted from viewpoint discrimination"); *Rowe*, 358 F.3d at 802 (finding that a city commission meeting is a limited public forum, and, while "content-neutral conditions for the time, place, and manner of access" are permissible, they "must be narrowly tailored to serve a significant government interest.").

[16] The Court treats Plaintiff's official capacity claims against JPs Duncan and Deakins and County Attorney Lester as if brought directly against Washington County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

17

1983) (citing *Monell*, 436 U.S. at 694). In practical terms, a plaintiff must allege (1) a constitutional violation (2) that results from (a) official municipal policy; (b) an unofficial custom, or (c) failure to train or supervise. *See Robbins v. City of Des Moines*, 984 F.3d 673, 681–82 (8th Cir. 2021).[17]

Plaintiff pleads an "unofficial custom" theory. He contends that Washington County failed to articulate a policy that would prevent removal from a public meeting on the basis of protected expression. To state a claim on this basis, Plaintiff must plausibly allege:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998) (brackets and internal quotation marks omitted).

Plaintiff fails to establish the first prong: a continuing, widespread pattern of unconstitutional conduct. He does not allege any other member of the public was impermissibly removed the Quorum Court prior to the events of June 28, 2021.

To be sure, Plaintiff asserts a pattern of regular censorship by Defendants, accompanied by rather transparent attempts to limit public participation, including the exclusion of JPs Eva Madison and Evelyn Rios Stafford from the legislative debate,

---

[17] As explained, Plaintiff adequately pleads a constitutional violation. The only question remaining is whether he plausibly alleges Washington County inflicted the constitutional injury.

frequent limiting of public comment to only 12 minutes, and an apparent willingness to tolerate disruptions by Defendants' political allies. But these acts, without more, do not violate the Constitution. The Quorum Court, as a limited, designated public forum, may impose viewpoint neutral and reasonable time, place, and manner restrictions. Plaintiff does not explain why Washington County fails to meet this standard.

## V.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED** with respect to:

- County Attorney Lester in his personal and official capacity on Counts I, II, and III. The Clerk of Court is **ORDERED** to terminate him as a party.

- JP Deakins in his personal and official capacity on Counts I and II, and in his official capacity only on Count III.

- JP Duncan in his personal and official capacity on Count III, and in his official capacity only on Counts I and II.

The Motion is **DENIED** with respect as to:

- JP Duncan in his personal capacity on Counts I and II.

- JP Deakins in his personal capacity on Count III.

**IT IS SO ORDERED** on this 7th day of April, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE